IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1133

 Filed: 2 June 2020

Wake County, No. 18 CVD 600701

MARISA MUCHA, Plaintiff,

 v.

LOGAN WAGNER, Defendant.

 Appeal by defendant from orders entered 13 June and 27 June 2018 by Judge

Debra S. Sasser in Wake County District Court. Heard in the Court of Appeals 4

September 2019.

 Parrott Law PLLC, by Robert J. Parrott Jr., for defendant-appellant.

 No appellee brief filed.

 Erik R. Zimmerman and Andrew R. Wagner, court-appointed amicus curiae.

 DIETZ, Judge.

 Logan Wagner and Marisa Mucha were in a relationship. Mucha ended the

relationship and asked Wagner not to contact her again. At the time, Mucha was a

college student in South Carolina and Wagner lived in Connecticut. Mucha later

moved to North Carolina and, the day she moved, Wagner called her 28 times on her

cell phone.

 In one of the early calls, Mucha answered and told Wagner not to call her again.

In a later call, Wagner left a voice message. When Mucha listened to the message,
 MUCHA V. WAGNER

 Opinion of the Court

she suffered a panic attack. The next day, she filed a pro se complaint and motion for

a domestic violence protective order in Wake County District Court.

 Wagner appeared solely to contest personal jurisdiction. The trial court denied

his motion to dismiss and entered a protective order. Wagner appealed.

 As explained below, the trial court properly determined that it could exercise

personal jurisdiction over Wagner. Although Wagner did not know at the time of the

calls that Mucha moved from South Carolina to North Carolina that day, he knew

that her semester of college had ended and she may no longer be residing there. Thus,

his conduct—purposefully directed at Mucha—was sufficient for him to reasonably

anticipate being haled into court wherever Mucha resided when she received the

calls. Applying the due process factors established by the Supreme Court—the nature

and context of Wagner’s contacts within our State; our State’s interest in protecting

its residents from this sort of harmful interpersonal interaction; and the convenience

to the parties, including Mucha’s need to call witnesses of the events who were with

her in North Carolina at the time—we hold that a North Carolina court properly

could exercise personal jurisdiction over Wagner in this action.

 Facts and Procedural History

 Marisa Mucha previously was in a relationship with Logan Wagner. That

relationship ended in December 2017. Wagner lives in Connecticut. At the end of their

 -2-
 MUCHA V. WAGNER

 Opinion of the Court

relationship, Mucha lived in South Carolina where she was attending college, but she

regularly traveled to Connecticut to visit her family.

 In early 2018, while living in South Carolina, Mucha ceased contact with

Wagner because she was having “severe panic attacks” and determined that contact

from Wagner “would trigger those panic attacks.” Mucha told Wagner not to contact

her again at some point in January 2018 and again in early May 2018.

 Later in May, Wagner saw pictures of Mucha on social media that gave him

“cause for concern.” One of the pictures, which is included in the record, contains

captions indicating that Mucha had concluded “final exams” and that “this semester

has truly been the worst.”

 On 15 May 2018, between 10:00 p.m. and midnight, Mucha received a total of

28 phone calls on her cell phone. The calls all came from an unknown number. On

the third or fourth call, Mucha answered her phone and asked who it was. It was

Wagner. Mucha “got scared” and “hung up.” She answered one more time after that

and told Wagner not to contact her again. Wagner continued calling and left a

voicemail. After listening to the voicemail, Mucha had a panic attack.

 Earlier that day, around 3:00 p.m., Mucha moved from South Carolina to North

Carolina. The record does not contain any explanation of why Mucha moved but, as

noted above, a social media post included in the record indicates that her college

semester in South Carolina had ended.

 -3-
 MUCHA V. WAGNER

 Opinion of the Court

 The next day, Mucha filed a pro se complaint and motion for a domestic

violence protective order in Wake County District Court. She explained that she

sought a protective order because she was scared Wagner “was trying to find me –

my location.”

 Wagner moved to dismiss Mucha’s complaint for lack of personal jurisdiction.

In an accompanying affidavit, he testified that he lives in Connecticut, has no

connection to North Carolina, and did not know Mucha had moved to North Carolina

until he received notice of her court filings.

 On 13 June 2018, the trial court heard both Wagner’s motion to dismiss and

Mucha’s motion for a domestic violence protective order. Wagner appeared solely to

contest personal jurisdiction. Mucha testified about various jurisdictional facts,

including her relationship with Wagner, her decision to cease contact with him, her

efforts to inform him of that decision, the 28 phone calls she received on 15 May 2018

while living in North Carolina, and her resulting panic attack. Other witnesses who

were present on the night of the calls also testified about Mucha’s reaction and her

panic attack.

 After hearing the jurisdictional testimony, the trial court announced that it

was denying Wagner’s motion to dismiss because North Carolina “does have

jurisdiction over Mr. Wagner” but explained to Wagner’s counsel that “you can’t

appeal anything until it’s reduced to writing and entered.” After further testimony,

 -4-
 MUCHA V. WAGNER

 Opinion of the Court

the trial court announced that it was granting Mucha’s motion for a domestic violence

protective order. The trial court entered the protective order later that day. Two

weeks later, on 27 June 2018, the trial court entered an order denying Wagner’s

motion to dismiss, accompanied by jurisdictional findings of fact and conclusions of

law.

 Wagner timely appealed. Mucha, who represented herself in the trial court,

did not appear in the appellate proceedings or file an appellee’s brief. Because of the

importance of the jurisdictional questions Wagner raised in his briefing, this Court

appointed amicus curiae to brief and argue in defense of the trial court’s ruling.

 Analysis

 Wagner argues that the trial court erred in denying his motion to dismiss for

lack of personal jurisdiction because he did not have sufficient minimum contacts to

subject him to personal jurisdiction in North Carolina. We reject this argument and

hold that, based on the particular facts of this case, the trial court’s finding of personal

jurisdiction was supported by jurisdictional facts concerning Wagner’s contacts with

Mucha while she was present in our State.

 When a trial court makes findings of fact in its ruling on a motion to dismiss

for lack of personal jurisdiction, “our review is limited to whether the trial court’s

findings of fact are supported by competent evidence in the record and whether the

conclusions of law are supported by the findings of fact.” State ex rel. Cooper v.

 -5-
 MUCHA V. WAGNER

 Opinion of the Court

Ridgeway Brands Mfg., LLC, 188 N.C. App. 302, 304, 655 S.E.2d 446, 448 (2008). We

review the trial court’s conclusions of law concerning personal jurisdiction de novo.

Carolina Power & Light Co. v. City of Asheville, 358 N.C. 512, 517, 597 S.E.2d 717,

721 (2004).

 “To determine if foreign defendants may be subjected to personal jurisdiction

in this State,” we must “determine whether our courts can constitutionally exercise

such jurisdiction consistent with due process of law.” Schofield v. Schofield, 78 N.C.

App. 657, 659, 338 S.E.2d 132, 133–34 (1986). Our courts can exercise this jurisdiction

only if the defendant has sufficient “minimum contacts” with our State that “the

maintenance of the suit does not offend traditional notions of fair play and substantial

justice.” Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

 This due process test “require[s] that individuals have fair warning that a

particular activity may subject [them] to the jurisdiction of a foreign sovereign.”

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The “fair warning

requirement” can be satisfied “if the defendant has purposefully directed his activities

at residents of the forum, and the litigation results from alleged injuries that arise

out of or relate to those activities.” Id. (citations omitted). “[T]he constitutional

touchstone remains whether the defendant purposefully established ‘minimum

contacts’ in the forum State.” Id. at 474.

 -6-
 MUCHA V. WAGNER

 Opinion of the Court

 Because the test focuses on this purposeful availment, it has a foreseeability

component. “[T]he foreseeability that is critical to due process analysis . . . is that the

defendant’s conduct and connection with the forum State are such that he should

reasonably anticipate being haled into court there.” Id. “[C]ourts in appropriate

case[s] may evaluate the burden on the defendant, the forum State’s interest in

adjudicating the dispute, the plaintiff’s interest in obtaining convenient and effective

relief, the interstate judicial system’s interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering

fundamental substantive social policies. These considerations sometimes serve to

establish the reasonableness of jurisdiction upon a lesser showing of minimum

contacts than would otherwise be required.” Id. at 477 (citation omitted). In short,

this jurisdictional analysis does not lend itself to bright-line rules; whether sufficient

contacts exist “depends upon the particular facts of each individual case.” Saxon v.

Smith, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997).

 Wagner frames the issue in this case as one involving his lack of knowledge of

Mucha’s physical location. Wagner had no contacts with North Carolina beyond the

28 phone calls he made to Mucha’s phone the day she moved to our State. And he

contends that “he had no reason to think Mucha was in North Carolina at the time of

those alleged phone calls” because his only information about her whereabouts was

 -7-
 MUCHA V. WAGNER

 Opinion of the Court

that she was a full-time college student in South Carolina. Thus, he argues, he had

“no reason to expect that he could be sued in North Carolina.”

 Were the facts in this case consistent with Wagner’s framing of them, it would

be a closer case. But the record does not support Wagner’s claim that he had no reason

to expect Mucha would be anywhere other than South Carolina. Wagner’s own

affidavit demonstrates that he was aware Mucha was an out-of-state student at her

university, that her family lived in another state, that she “regularly made trips” to

visit her family, and that the spring semester had ended. Some university students

remain on the campus during the summer, but many do not. They return home or

travel elsewhere away from campus. Thus, it was not reasonable for Wagner to

assume that the only place Mucha could be when he called her cell phone that night

was in South Carolina, where her university was located.

 We thus agree with the amicus that the fact that Wagner did not know Mucha

was in North Carolina when he made the calls does not, by itself, preclude North

Carolina’s courts from exercising personal jurisdiction. Instead, the jurisdictional

analysis depends on weighing and balancing the factors established by the Supreme

Court to assess whether Wagner purposefully established sufficient minimum

contacts with North Carolina to subject him to personal jurisdiction here. We

therefore examine those factors and assess whether they support the trial court’s

determination.

 -8-
 MUCHA V. WAGNER

 Opinion of the Court

 Our courts have separated the Supreme Court’s due process analysis into five

discrete factors: “(1) the quantity of the contacts; (2) the quality and nature of the

contacts; (3) the source and connection of the cause of action to the contacts; (4) the

interests of the forum state, and (5) the convenience to the parties.” Cooper v. Shealy,

140 N.C. App. 729, 734, 537 S.E.2d 854, 858 (2000). We address these factors in turn

below.

 First, we examine the quantity of contacts. Wagner made 28 separate calls to

Mucha’s cell phone, most of which occurred after Mucha already answered once,

determined the caller was Wagner, and told him not to call her again. These multiple,

repeated phone calls, particularly after being told not to call, are “substantial” and

weigh in favor of exercising personal jurisdiction. Brown v. Ellis, 206 N.C. App. 93,

100, 696 S.E.2d 813, 819 (2010).

 We next examine the quality and nature of these calls. As noted above, the

calls continued even after Mucha asked Wagner not to call her again. The calls caused

Mucha to feel “scared” and, after listening to a voice message left during one of the

calls, Mucha suffered a panic attack. Although the content of that voice message is

not available in the record, the evidence received by the trial court demonstrated that

these calls were harmful to Mucha and she wanted them to stop. These harmful

effects that the 28 phone calls had on Mucha, while she was present in North

Carolina, likewise support the exercise of personal jurisdiction. See id.

 -9-
 MUCHA V. WAGNER

 Opinion of the Court

 Next, we consider the source and connection of the cause of action to the

contacts. This factor strongly supports exercising personal jurisdiction. It was

Wagner’s 28 unwanted calls to Mucha’s cell phone that caused her the harm that, in

turn, led her to seek a protective order from North Carolina’s courts. The calls

occurred late in the evening and Mucha sought relief from the court the next day.

This creates a powerful connection between the North Carolina contacts and the legal

action in North Carolina’s courts.

 The next factor is the interests of the forum state. Here, too, the factor weighs

in favor of jurisdiction. We have held that “North Carolina has a strong interest in

protecting its citizens from local injury caused by the tortious conduct of foreign

citizens.” Cooper, 140 N.C. App. at 735, 537 S.E.2d at 858. Our State has the same

strong interest in protecting its residents from interpersonal violence or harassment

stemming from domestic relationships.

 Finally, we consider the convenience to the parties. Admittedly, North

Carolina is an inconvenient forum for Wagner, who lives in Connecticut and has no

ties to North Carolina. But Mucha lives in North Carolina and so, too, do the

witnesses she called to support her legal claim. In similar situations, this Court has

determined that, although this factor may not decisively weigh in favor of exercising

jurisdiction, it does not preclude jurisdiction when the other factors support it. See

Brown, 206 N.C. App. at 101, 696 S.E.2d at 819.

 - 10 -
 MUCHA V. WAGNER

 Opinion of the Court

 In sum, when Wagner purposefully called Mucha 28 times in a single night,

repeating the calls even after she answered and asked him not to call her again, he

established sufficient minimum contacts with North Carolina to support the exercise

of personal jurisdiction. Although Wagner may not have known Mucha moved to

North Carolina earlier that day, his conduct—directed at Mucha personally—was

sufficient for him to reasonably anticipate being haled into court wherever Mucha

resided when she received the calls. See A.R. v. M.R., 351 N.J. Super. 512, 520, 799

A.2d 27, 31–32 (App. Div. 2002) (finding personal jurisdiction in claimant’s request

for a protective order where the defendant “repeatedly placed telephone calls into this

state in his search for her”). Considering the nature and context of Wagner’s calls to

Mucha and our State’s interest in protecting its residents from this sort of harmful

interpersonal interaction, we hold that a North Carolina court exercising personal

jurisdiction over Wagner in an action for a domestic violence protective order “does

not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co., 326

U.S. at 316.

 But we emphasize that this is a close case and our holding is bound to these

specific facts, where there was evidence that Wagner had some knowledge of the

particular circumstances of Mucha’s life and the possibility that, when he called her

cell phone, she could be in many different possible locations. See Saxon, 125 N.C. App.

at 173, 479 S.E.2d at 794. In another case, on different facts, phone calls to the cell

 - 11 -
 MUCHA V. WAGNER

 Opinion of the Court

phone of a person in an unknown location may not be sufficient to meet the due

process requirements of personal jurisdiction. See Mannise v. Harrell, 249 N.C. App.

322, 331, 791 S.E.2d 653, 659 (2016).

 Wagner also argues that the trial court erred because exercising personal

jurisdiction on these facts is not permitted by North Carolina’s long-arm statute. See

N.C. Gen. Stat. § 1-75.4. The amicus contends that this issue is not preserved for

appellate review because Wagner did not assert it in his motion to dismiss nor secure

a ruling on this issue from the trial court in the challenged order. We agree that the

trial court did not address this issue either in its oral ruling or its written order. “In

order to preserve an issue for appellate review . . . [i]t is also necessary for the

complaining party to obtain a ruling upon the party’s request, objection, or motion.”

N.C. R. App. P. 10(a)(1). Thus, we are unable to engage in appellate review of this

issue.

 Conclusion

 For the reasons discussed above, we affirm the trial court’s orders.

 AFFIRMED.

 Judges ZACHARY and YOUNG concur.

 - 12 -